**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:                Justices:
Clifford W. Taylor        Michael F. Cavanagh
                                  Elizabeth A. Weaver
                                  Marilyn Kelly
                                  Maura D. Corrigan
                                  Robert P. Young, Jr.
                                  Stephen J. Markman

FILED JULY 25, 2007

THE PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v                                                            No. 131223

MICHAEL DAVID KELLER,

Defendant-Appellee.

_____

THE PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v                                                            No. 131224

MELINDA SUE KELLER,

Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

We ordered oral argument on the prosecution's applications for leave to appeal to consider the sufficiency of an affidavit in support of a search warrant under the Fourth Amendment and MCL 780.653, as well as the proper remedy for violations of MCL 780.653. Because we find no constitutional or statutory

violation, these consolidated appeals do not present the opportunity to discuss remedies for such violations. Therefore, we reverse the judgments of the lower courts, which held that violations of the statute and the constitution had occurred, and remand the cases to the Genesee Circuit Court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Crime Stoppers[1] received an anonymous tip that defendants were operating a marijuana growing and distribution operation out of their home in Flint. Crime Stoppers passed the tip on to the Flint police, who conducted surveillance at defendants' home on three separate days, but did not observe any evidence of a marijuana growing and distribution operation. The police then conducted a "trash pull" at defendants' home and discovered a partially burnt marijuana cigarette, a green leafy substance on the side of a pizza box, and correspondence tying defendants to the residence. Based on this information, the police applied for a search warrant for defendants' home.

The affidavit in support of the warrant application is particularly important to this appeal. Paragraph seven stated:

---

[1] The prosecutor describes Crime Stoppers as "a public service announcement on television asking for information about particular crimes. The individuals giving information are sometimes monetarily rewarded." See MCL 600.2157b(4)(b) ("'Crime stoppers organization' means a private, nonprofit organization that distributes rewards to persons who report to the organization information concerning criminal activity and that forwards the information to the appropriate law enforcement agency.").

That during the past several weeks, your affiant received an anonymous tip stating that large quantities of marijuana was being sold and manufactured out of 3828 Maryland, City of Flint, Genesee County Michigan. The tipster also indicated that there is a hidden room used for manufacturing Marijuana inside said residence.

In paragraph eight, the affidavit stated:

That on November 30, 2004, your affiant removed two (2) trash bags, white in color with red ties that were located on the south side of Maryland, east of the driveway, near the curb of 3828 Maryland. After removing the trash bags your affiant transported the bags directly to the office of the City of Flint Police Department. Your affiant and fellow officer Marcus Mahan examined the contents of the trash bags. Found inside the trash bags were one (1) suspected marijuana roach, and a green leafy substance on the side of a pizza box, and several pieces of correspondence addressed to Michael/Melinda Keller of 3828 Maryland.

Paragraph nine stated "[y]our affiant field test[ed] . . . the suspected marijuana which tested positive for the presence of marijuana." Based on the affidavit, the magistrate issued a search warrant.

When the police executed the search warrant, they uncovered nearly six ounces of marijuana, as well as firearms and marijuana smoking paraphernalia. Both defendants were charged with maintaining a drug house[2] and possession of marijuana.[3] The district court bound both defendants over to the circuit court for trial on those charges.

---

[2] MCL 333.7405(1)(d) and MCL 333.7406.

[3] Mr. Keller was charged with possession with intent to deliver, MCL 333.7401, while Mrs. Keller was charged with simple possession, MCL 333.7403.

In the circuit court, defendants filed motions in limine to suppress any evidence obtained during the execution of the search warrant, arguing that "the reliability and credibility standards set forth in MCLA 780.653 are totally absent from this case relative to the time of the issuance of the search warrant." Specifically, defendants argued that the police misled the district judge issuing the warrant, and that there was no support for the anonymous tip. The circuit court found a violation of MCL 780.653, but the court held that it could not order suppression based on that violation, citing *People v Hawkins*.[4] To remedy the violation, the court held that defendants could "argue to the jury that the police department intentionally violated the law of the State of Michigan; that the police department deliberately conducted or mislead [sic] a magistrate when seeking the search warrant."[5]

The prosecutor filed interlocutory appeals, raising only the issue of the proper remedy for a violation of MCL 780.653. The Court of Appeals granted the prosecutor's applications for leave to appeal, but instead of addressing the issue raised by the prosecutor, the Court held that the search warrant and the underlying affidavit could not support a finding of probable cause. "Therefore, any evidence obtained pursuant to the warrant was illegally obtained and should be suppressed

---

[4] 468 Mich 488; 668 NW2d 602 (2003).

[5] The circuit court also heard motions regarding the *corpus delicti* rule, whether to quash the bindovers on the charges of maintaining a drug house, and whether separate trials were warranted. However, none of those motions is presently before this Court.

by the operation of the exclusionary rule unless an exception applies."[6] The Court then opined that "the good-faith exception is inapplicable in this case."[7] The Court cited two facts to support that conclusion. First, "[t]he affiant indicated that she had directly received the anonymous tip and then conveyed it to police."[8] Second, "the affidavit indicates that only a roach and some possible marijuana residue were found during a trash pull—hardly evidence that would lead a reasonable person to believe that drug trafficking was occurring at the house."[9] Additionally, the Court held that "[b]ecause the affidavit was insufficient, we would also conclude that the magistrate wholly abandoned his judicial role when he issued the warrant."[10]

Judge Talbot dissented. He argued that the suppression ruling was not properly before the Court because defendants never appealed that ruling. With respect to the issue properly before the Court, Judge Talbot disagreed with the circuit court ruling that defendants could argue to the jury that the police misled the magistrate and violated MCL 780.653. He concluded that "if the Legislature intended to allow a defendant to argue to the jury that the police illegally obtained a search warrant as a remedy for a violation of MCL 780.653, it would have

---

[6] *People v Keller*, 270 Mich App 446, 450; 716 NW2d 311 (2006).

[7] *Id*. at 451.

[8] *Id*.

[9] *Id*.

[10] *Id*.

5

specifically listed such a remedy and would not have provided the specific remedies in MCL 780.657 and MCL 780.658."[11]

This Court scheduled oral argument on the prosecutor's application for leave to appeal.[12] The order directed the parties to address four issues:

> (1) whether the presence in the defendants' trash of a small amount of marijuana constituted probable cause justifying the search; (2) assuming there was a Fourth Amendment violation, whether the police acted in objectively reasonable good-faith reliance on the warrant; (3) whether the search violated MCL 780.653; and (4) assuming that the search violated MCL 780.653, but not the Fourth Amendment, whether the trial court elected a proper remedy by permitting the defense to argue to the jury that the police misled the magistrate and violated Michigan law in their efforts to obtain a search warrant.[13]

## STANDARD OF REVIEW

"Questions of law relevant to a motion to suppress evidence are reviewed de novo."[14] Similarly, constitutional and statutory construction involves questions

---

[11] *Id*. at 456 (Talbot, J., dissenting). MCL 780.657 provides for a fine of not more than $1,000 or up to one year of imprisonment for "[a]ny person who in executing a search warrant, wilfully exceeds his authority or exercises it with unnecessary severity . . . ." MCL 780.658 provides for the same penalties for "[a]ny person who maliciously and without probable cause procures a search warrant to be issued and executed . . . ."

[12] 477 Mich 968 (2006).

[13] *Id.*

[14] *Hawkins*, *supra* at 496-497, citing *People v Hamilton*, 465 Mich 526, 529; 638 NW2d 92 (2002); see also *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999).

of law that are also reviewed de novo.[15]  However, "'after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review.  A magistrate's "determination of probable cause should be paid great deference by reviewing courts."'"[16]

## ANALYSIS

There are two separate but related issues presented by this appeal.  The first concerns the constitutional validity of the affidavit in support of the search warrant.  If the affidavit was constitutionally infirm, then the Court of Appeals correctly held that, absent an exception, the evidence seized pursuant to the warrant must be excluded.[17]  However, if the affidavit passes constitutional

---

[15] *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006).

[16] *People v Russo*, 439 Mich 584, 603-604; 487 NW2d 698 (1992), quoting *Illinois v Gates*, 462 US 213, 236; 103 S Ct 2317; 76 L Ed 2d 527 (1983), quoting *Spinelli v United States*, 393 US 410, 419; 89 S Ct 584; 21 L Ed 2d 637 (1969).

[17] *People v Goldston*, 470 Mich 523, 525-526; 682 NW2d 479 (2004).  However, the Court was incorrect to conclude that "the good-faith exception is inapplicable in this case" and that "[b]ecause the affidavit was insufficient, . . . the magistrate wholly abandoned his judicial role when he issued the warrant." *Keller*, *supra* at 451.  The affiant did not "mislead" the district judge, *id*., and the affidavit was not "lacking in indicia of probable cause . . . ." *Goldston*, *supra* at 531 (quotation marks omitted).  Moreover, an appellate court's determination that an affidavit was insufficient does not, in and of itself, provide adequate support for the conclusion that a magistrate "wholly abandoned his judicial role." Abandoning the judicial role requires more than reaching a different legal conclusion from that of an appellate court.  See, e.g., *Lo-Ji Sales, Inc v New York*, 442 US 319, 328; 99 S Ct 2319; 60 L Ed 2d 920 (1979).

7

muster, then the Court must determine whether the affidavit conformed to MCL 780.653.[18]

## THE CONSTITUTIONALITY OF THE SEARCH WARRANT

The Fourth Amendment requires a warrant to "particularly describ[e] the place to be searched, and the person or things to be seized."  The probable cause requirement is relevant to whether "contraband or evidence of a crime will be found in a particular place."[19]  With respect to appellate review of probable cause for the issuance of a warrant,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found

---

[18] MCL 780.653 provides:

The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her.  The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:

(a) If the person is named, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information.

(b) If the person is unnamed, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.

[19] *Gates*, *supra* at 238; see also *United States v Grubbs*, 547 US 90, 95; 126 S Ct 1494; 164 L Ed 2d 195 (2006) ("In the typical case where the police seek permission to search a house for an item they believe is already located there, the magistrate's determination that there is probable cause for the search amounts to a prediction that the item will still be there when the warrant is executed.").

in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.[20]

In this case, the Court of Appeals cited two statements in the affidavit that the magistrate may have relied on to find probable cause: (1) the reference to the anonymous tip and (2) the reference to the roach and marijuana residue from the trash pull. The Court dismissed the tip as unreliable because the police could not prove that the source spoke with personal knowledge or was reliable. Additionally, the Court found that the tip "is at significant odds" with both the evidence from the trash pull and the evidence discovered during the execution of the warrant.[21] The Court also dismissed the evidence of marijuana discussed in the affidavit as "only a roach and some possible marijuana residue . . . [,] hardly evidence that would lead a reasonable person to believe that drug trafficking was occurring at the house."[22] Ultimately, the Court of Appeals held that

> [c]onsidering the search warrant and the underlying affidavit, as read in a commonsense and realistic manner, we conclude that a reasonably cautious person could not have concluded that there was a "substantial basis" for the finding of probable cause, i.e., for inferring a "fair probability" that evidence of drug trafficking would be found at defendants' house.[23]

---

[20] *Gates*, *supra* at 238-239, quoting *Jones v United States*, 362 US 257, 271; 80 S Ct 725; 4 L Ed 2d 697 (1960) (changes in *Gates*). This Court unanimously adopted this standard in *People v Landt*, 439 Mich 870; 475 NW2d 825 (1991), as noted in *Russo*, *supra* at 603.

[21] *Keller*, *supra* at 450.

[22] *Id*. at 451.

[23] *Id*. at 450, citing *Russo*, *supra* at 603-604.

The Court of Appeals analysis is erroneous for a number of reasons. First, the Court reviewed the magistrate's decision de novo.[24] Review de novo is proper for "questions of law relevant to a motion to suppress."[25] However, that standard is not appropriate for review of the magistrate's probable cause determination. That determination is entitled to "'great deference by reviewing courts.'"[26]

Second, the Court improperly framed this case as a test of the source's reliability instead of examining all the circumstances set forth in the affidavit to determine whether there was a substantial basis for the magistrate to conclude that "there [was] a fair probability that contraband or evidence of a crime [would] be found" at defendants' home.[27] Focusing on the tip was inappropriate because, regardless of the veracity of the source, the officer participated in a trash pull that revealed evidence of marijuana and correspondence tying the trash to the defendants. The presence of marijuana in defendants' trash shows "a fair probability that contraband or evidence of a crime will be found in a particular place."[28] Because this officer uncovered direct evidence of illegal activity, the marijuana, it was unnecessary to delve into the veracity of the source.

---

[24] *Keller, supra* at 448, citing *People v Hickman*, 470 Mich 602, 605; 684 NW2d 267 (2004).

[25] *Hickman*, *supra* at 605.

[26] *Gates*, *supra* at 236 (citation omitted).

[27] *Id*. at 238.

[28] *Id*.

10

The unnecessary focus on the tip stems from the Court inappropriately dismissing the marijuana from the "trash pull" as "only a roach." The Court correctly stated that the tip suggested a drug trafficking operation; however, the police conducted further investigation, leading to the discovery of marijuana tied to defendants' home. The marijuana established probable cause to search the home for additional contraband.[29]

The dissent focuses on the scope of the warrant, arguing that "[a] warrant issued for drug possession would only authorize a search for marijuana and possibly paraphernalia used in the consumption of marijuana, not the array of evidence of distribution authorized by the warrant in this case." *Post* at 5-6. The dissent's argument is irrelevant, however, because even supposing for the sake of argument that probable cause did not exist to search for "evidence of distribution,"

---

[29] The dissent rejects a finding of probable cause under these circumstances because "[a]ll the trash pull established was that, on one occasion, someone with access to defendants' trash discarded a marijuana cigarette in one of their trash bags." *Post* at 6 n 3. However, as Justice Cavanagh has acknowledged, to establish probable cause to issue a search warrant it is only necessary to show a ""substantial basis" for inferring a "fair probability" that contraband or evidence of a crime will be found in a particular place.'" *Goldston*, *supra* at 564 (Cavanagh, J., dissenting), quoting *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000). Because marijuana was found in defendants' trash outside of defendants' home, a "fair probability" existed that marijuana would also be found *inside* defendants' home. See *United States v Briscoe*, 317 F3d 906, 908 (CA 8, 2003) (holding that drugs found in trash "were sufficient *stand-alone* evidence to establish probable cause" to issue search warrant for possession and distribution) (emphasis in original); *United States v Lawrence*, 308 F3d 623, 627 (CA 6, 2002) (holding that probable cause existed to issue search warrant after discovery of cocaine residue in defendant's trash, "even if [an informant's] statements were excised from the search warrant affidavit").

11

"[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized—on plain view grounds, for example—during . . . execution [of the valid portions])." [*United States v Sells*, 463 F3d 1148, 1150 (CA 10, 2006), quoting *United States v Brown*, 984 F2d 1074, 1077 (CA 10, 1993).]

This rule has been adopted by every federal circuit,[30] as well as our Court of Appeals.[31]

As articulated in *Sells*, there is a "multiple-step analysis to determine whether severability is applicable."[32]  First the Court must divide the warrant into categories.  Then, the Court must evaluate the constitutionality of each category. If only some categories are constitutional, the Court must determine if the valid categories are distinguishable from the invalid ones and whether the valid categories "make up the great part of the warrant."[33]  Here, the warrant authorizes the seizure of three categories of evidence: marijuana; distribution evidence, such as currency and packaging paraphernalia; and possession evidence, such as proof of residency.  Of these three categories, the only one that is arguably invalid is the

---

[30] See *Sells*, *supra* at 1150 n 1 (listing federal cases).

[31] See, e.g., *People v Ulman*, 244 Mich App 500, 510; 625 NW2d 429 (2001), and *People v Griffin*, 235 Mich App 27, 42; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146 (2007), both discussing the effect of the invalidity of a portion of the affidavit for a warrant, and *People v Kolniak*, 175 Mich App 16, 18-23; 437 NW2d 280 (1989).

[32] *Sells*, *supra* at 1151.

[33] *Id*.

distribution evidence.  If it were invalid, that category would be severable from the others.

While all three categories are related to marijuana crimes, the distribution evidence relates to a distinct crime.  Furthermore, when determining whether a valid portion constitutes a greater part of a warrant, "merely counting parts, without any evaluation of the practical effect of those parts, is an improperly 'hypertechnical' interpretation of the search authorized by the warrant."[34]  Instead, a court should "evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant."[35]  In this case, the authorized search for marijuana permitted police officers to search the entire house and to investigate containers in which marijuana may have been found.  Hence, the scope of the search authorized by the valid portion of the search was extremely broad, and allowed police officers to search in almost every place which the authorization to search for distribution evidence permitted.  For this reason, the valid portion of the warrant, in our judgment, formed the greater part of the search warrant.    Therefore, even if the dissent is correct that the warrant is overbroad, the distribution category is severable.

In this case, the police did not seize any of the "evidence of distribution" for which the warrant authorized a search for—"plastic packages, paper packets,

---

[34] *Sells*, *supra* at 1160.

[35] *Id*.

13

and scales for weighing . . . and records of drug transactions . . . ." Thus, even if that portion of the warrant is invalid, there is no need to suppress any evidence when no "evidence of distribution" was seized, because "'the infirmity of part of a warrant'" only requires that "'evidence seized pursuant to that part of the warrant'" be suppressed.[36]

Therefore, even accepting the Court of Appeals determination that the source was unreliable, the marijuana from the trash provides a "'substantial basis for conclud[ing]' that probable cause existed."[37] Because the magistrate properly found probable cause for the search, the evidence found during that search is not

---

[36] *Sells, supra* at 1150, quoting *Brown, supra* at 1077. The dissent considers the firearms seized to be "evidence of marijuana distribution." *Post* at 16. However, it is "well settled that objects such as weapons or contraband found in [plain view] may be seized by the police without a warrant." *People v Johnson*, 431 Mich 683, 691 n 5; 431 NW2d 825 (1988). Moreover, "'a warrant that authorizes an officer to search a home for illegal [drugs] also provides authority to open closets, chests, drawers, and containers in which the [drugs] might be found.'" *People v Coleman*, 436 Mich 124, 131; 461 NW2d 615 (1990), quoting *United States v Ross*, 456 US 798, 821; 102 S Ct 2157; 72 L Ed 2d 572 (1982). In this case, it is unclear from the record which firearms the prosecutor sought to introduce and where these firearms were found. However, regardless of where the firearms were found, the firearms evidence should not be suppressed. The valid search warrant for contraband in defendants' home allowed police officers to "'open closets, chests, drawers, and containers . . . .'" Hence, even if the firearms seized were in a container, the police officers were validly authorized to open such containers to search for contraband. If the police officers found the firearms after opening a container, those weapons would then be in plain view and could be validly seized. Thus, the evidence of firearms found in defendants' home is not properly suppressed.

[37] *Id*. at 238-239, quoting *Jones, supra* at 271.

14

subject to the exclusionary rule. We reverse the Court of Appeals holding to the contrary.

STATUTORY CHALLENGE

The circuit court found a violation of MCL 780.653 because the hearsay information in the affidavit was not reliable and because the officer "misled" the magistrate. The Court of Appeals agreed, citing the fact that "[t]he affiant indicated that she had directly received the anonymous tip when, in fact, Crime Stoppers received the tip and then conveyed it to the police."[38] This conclusion was based on the affidavit, which stated:

> That during the past several weeks your affiant received an anonymous tip stating that large quantities of marijuana was being sold and manufactured out of 3828 Maryland, City of Flint, Genesee County, Michigan. The tipster also indicated that there is a hidden room used for manufacturing marijuana inside said residence.

We find the Court of Appeals reasoning inadequate. First, the affiant does not indicate "that she had directly received" the tip. Because the affiant is the subject of the sentence, it is wholly unclear who relayed the tip to her. Clearly, one could infer that the anonymous source spoke directly to the affiant, but that is not the only inference possible. Nonetheless, under MCL 780.653, the key fact for purposes of probable cause is that the source was anonymous. The officer made no attempt to conceal that fact. The fact that the anonymous source called Crime Stoppers instead of the police is immaterial under the statute.

---

[38] *Keller, supra* at 451.

The statute requires that "[t]he magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her."[39] Further, "[t]he affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains" indications that the named person has personal knowledge, that the unnamed person spoke with personal knowledge and is credible, or that the unnamed person spoke with personal knowledge and the information is reliable.[40]

The issue then is whether the affidavit is "based upon" information supplied by an unnamed person. "Base," when used as a verb, means "to place or establish on a base or basis; ground, found (usu[ally] fol[lowed] by *on* or *upon*): *Our plan is based on an upturn in the economy*."[41] In this case, the affidavit is "based upon" the affiant's[42] personal efforts to search the trash and discover the marijuana because that evidence is the foundation for probable cause. The affidavit states that "based upon the items found [in the trash pull] and [the] affiant's experience in the investigation of marijuana . . . [the] affiant has probable

---

[39] MCL 780.653.

[40] *Id*.

[41] *Random House Webster's College Dictionary* (1997).

[42] In context, "complainant" seems to be a synonym for "affiant." Black's Law Dictionary (5th ed) defines "complainant" as "[o]ne who applies to the courts for legal redress by filing a complaint (i.e. plaintiff). Also, one who instigates prosecution or who prefers accusation against suspected person." The affiant, who is also asking for a search warrant, is someone who is applying to the court for redress or preferring an accusation.

16

cause to believe that evidence of illegal drug activity" would be found at defendants' address. Hence, the affidavit was explicitly "based upon" the trash pull. While the anonymous tip prompted the investigation, the affidavit is not "based upon" that information because the marijuana found is by itself sufficient for probable cause. Thus, the statutory requirement that an anonymous tip bear indicia of reliability does not come into play.[43] Because there is no statutory violation, we reverse the judgment of the circuit court.[44] Further, without a statutory violation, there is no need to discuss the propriety of the circuit court's remedy for the alleged violation.

---

[43] Even if that requirement came into play, the trash pull partially corroborating the tip provided "affirmative allegations from which the magistrate may conclude . . . that the [anonymous source] is credible." MCL 780.653. See *United States v Hammond*, 351 F3d 765, 772 (CA 6, 2003) (a "tip can take on an increased level of significance . . . if corroborated by the police through subsequent investigation"); *United States v Le*, 173 F3d 1258, 1266 (CA 10, 1999) (holding that tips from two informants that a defendant was selling methamphetamine were corroborated when an officer "search[ed] Le's refuse and discover[ed] traces of methamphetamine").

[44] The dissent would essentially hold that whenever an affidavit makes the slightest reference to information supplied by an informant, the requirements of MCL 780.653 must be complied with. To reach this conclusion, the dissent relies on the first sentence of MCL 780.653, which states that "[t]he magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her." Contrary to what the dissent concludes, the phrase "based upon" has the same meaning in both the first and second sentences. The difference between the sentences is that the first requires the magistrate to found his or her probable cause determination on all the information in the affidavit, while the second sentence only applies if the affidavit itself is founded on information from a source other than the affiant.

17

CONCLUSION

We disagree with the lower courts' holdings that the affidavit in support of the search warrant failed to establish probable cause and that there was a violation of MCL 780.653. Therefore, we reverse the Court of Appeals order to suppress the evidence obtained from the search and the circuit court's order allowing defendants to argue a statutory violation to the jury. We remand the cases to the circuit court for further proceedings in accordance with this opinion.

Robert P. Young, Jr.
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Stephen J. Markman

18

STATE OF MICHIGAN

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

                                        No. 131223

v

MICHAEL DAVID KELLER,

        Defendant-Appellee.

_____


PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                     No. 131224

MELINDA SUE KELLER,

         Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

Because I believe that the search warrant issued in this case was constitutionally invalid, I respectfully dissent. I would affirm the judgment of the Court of Appeals.

## I. THE CONSTITUTIONALITY OF THE SEARCH WARRANT

I disagree with the majority's conclusion that the search warrant was constitutionally valid. The United States Constitution requires search warrants to

be based "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV.[1]  Those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense.  *Warden, Maryland Penitentiary v Hayden*, 387 US 294, 307; 87 S Ct 1642; 18 L Ed 2d 782 (1967). To determine whether probable cause exists, a magistrate must evaluate "whether, given all the circumstances . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

In Michigan, these constitutional mandates are implemented in part by MCL 780.651(1) and MCL 780.653, which require that probable cause be shown through an affidavit presented to a magistrate who will decide, on the basis of the facts related within the affidavit, whether to issue a warrant.  If an affidavit contains hearsay information, MCL 780.653 calls for assurances that the information is credible and based on personal knowledge.  An affidavit based on information from an unnamed source must include "affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge

---

[1] Similarly, the Michigan Constitution provides that "[n]o warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."  Const 1963, art 1, § 11.

2

of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b).

The search warrant issued in this case failed to meet the constitutional standards enunciated in *Gates* and implemented by MCL 780.653(b). Our role in reviewing the constitutional validity of a search warrant is to assess the magistrate's determination to ensure that there was a "'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, *supra* at 238-239, quoting *Jones v United States*, 362 US 257, 271; 80 S Ct 725; 4 L Ed 2d 697 (1960). The search warrant was supported by an affidavit that contained information from an anonymous source[2] and evidence from a "trash pull" conducted at defendants' residence. The information in the affidavit did not provide a substantial basis for concluding that a search of defendants' residence would uncover evidence of drug trafficking.

Under *Gates* and MCL 780.653, the magistrate must consider the basis of the source's knowledge. The affidavit contained no indication that the anonymous source spoke with personal knowledge of defendants' alleged manufacturing and distribution scheme. The mere assertion that marijuana was being manufactured in a hidden room of a residence does not amount to an "explicit and detailed

---

[2] The affidavit stated that "your affiant received an anonymous tip stating that large quantities of marijuana was [sic] being sold and manufactured out of [defendants' residence]. The tipster also indicated that there is a hidden room used for manufacturing Marijuana inside said residence."

3

description of alleged wrongdoing, along with a statement that the event was observed first-hand," that would build confidence in the source's information. *Gates*, *supra* at 234.

In addition, the affidavit failed to establish the credibility of the anonymous source. For example, the affiant did not indicate that the source had provided reliable information in the past. Nor did the evidence discovered in the trash pull demonstrate that the source was credible or the information reliable by corroborating the allegation of drug trafficking. The trash pull uncovered remnants of a single burnt marijuana cigarette, while the source had accused defendants of manufacturing and selling large quantities of marijuana in their home. The information contained in the affidavit entirely failed to establish the source's credibility and the accuracy of the information.

Of course, no single factor—the source's basis of knowledge, the reliability of the information, or the veracity of the source—is dispositive. Under the totality-of-the-circumstances analysis of *Gates*, the magistrate weighs the "various indicia of reliability" to make a "balanced assessment" of an informant's tip. *Id.* But here no factor weighed heavily enough to justify crediting the anonymous tip. And without the anonymous tip, the affidavit contained only evidence of a single burnt marijuana cigarette retrieved through a trash pull—not enough evidence to conclude that defendants' residence was being used to sell and manufacture large quantities of marijuana. Accordingly, the magistrate did not have a substantial

4

basis for believing that a search of defendants' residence would uncover evidence of marijuana manufacturing and sale.

The majority contends that even if the anonymous source was unreliable, the warrant was nonetheless valid because the marijuana discovered in the trash pull supplied "probable cause to search the home for additional contraband." *Ante* at 11. But this assertion completely disregards the scope of the warrant. The Fourth Amendment expressly requires that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." A search that exceeds the scope of its authorizing warrant is constitutionally invalid. "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." 2 LaFave, Search & Seizure (4th ed), § 4.6(a), p 607. The evidence recovered from the trash pull alone cannot validate a search under the warrant issued in this case. The warrant authorized a search for evidence of narcotics distribution when *at most* the trash pull would have only established probable cause for possession of marijuana.[3] A warrant issued for drug possession

---

[3] The warrant authorized a search for

marijuana and other controlled substances, U.S. Currency, paraphernalia used in the blending, packaging and sale of the above stated controlled substance, including, but not limited to, plastic packages, paper packets, and scales for weighing, and the like, firearms and ammunition, papers and effects showing occupancy, ownership, dominion, or control of said premises, including but not

(continued…)

5

would only authorize a search for marijuana and possibly paraphernalia used in the consumption of marijuana, not the array of evidence of distribution authorized by the warrant in this case. The majority entirely overlooks the discrepancy between the trash-pull evidence and the scope of the issued warrant.

## II. PARTIAL SUPPRESSION

To justify the search under this warrant, the majority adopts a doctrine known as "partial suppression" or "severance." According to this doctrine, invalid

_____
(…continued)
> limited to rent and property receipts, keys, bills, and cancelled mail envelopes, and records of drug transactions . . . .

Further, it is highly questionable whether the contraband found in the trash, without more, could provide probable cause to believe that marijuana would be found in defendants' home. The majority is too quick to conclude that simply because a burnt marijuana cigarette was found in defendants' trash on *one occasion*, there was a "substantial basis" for inferring a "fair probability" that more marijuana would be found in defendants' home the next day. All the trash pull established was that, on one occasion, someone with access to defendants' trash discarded a marijuana cigarette in one of their trash bags. One could infer that the cigarette belonged to defendants, but it certainly could have come from another source, whether it was a neighbor or passerby disposing his own garbage in defendants' trash, or a guest in defendants' home. After all, the very reason trash searches without warrants are constitutional is because a person loses his privacy interest by putting it out for collection, thereby relinquishing control over it. Even supposing that the marijuana belonged to defendants, a single instance of marijuana use does not necessarily permit the assumption that marijuana would likely be present in defendants' home when the warrant is executed. See, e.g., *United States v Cunningham*, 145 F Supp 2d 964, 967 (ED Wis, 2001) (A trace amount of cocaine discovered in a garbage search "by itself is insufficient to establish probable cause that contraband would be found at defendant's residence. The presence of cocaine traces in garbage does not necessarily give rise to an inference that additional drugs are located on the premises. Cocaine traces may be attributable to one time personal use of drugs by either a resident or a third party.")

portions of a warrant may be severed from valid portions of a warrant; the evidence obtained pursuant to the invalid portion is suppressed, while the evidence obtained through the valid portion is admissible. *United States v Sells*, 463 F3d 1148, 1150 (CA 10, 2006). Whether Michigan should adopt this rule is a discrete question from whether it should be applied in this case. Unfortunately, in its eagerness to adopt this rule, the majority neglects crucial safeguards that federal circuit courts consider before applying the doctrine.[4] As one circuit court explained:

> That severance may be appropriate in theory does not mean it is appropriate in a particular case. The doctrine is not available where no part of the warrant is sufficiently particularized, where no portion of the warrant may be meaningfully severed, or where the sufficiently particularized portions make up only an insignificant or tangential part of the warrant. [*United States v George*, 975 F2d 72, 79-80 (CA 2, 1992) (citations omitted).]

---

[4] See *United States v Diaz*, 841 F2d 1, 4 (CA 1, 1988) (severance is appropriate "where the bulk of the warrant and records seized are fully supported by probable cause"); *United States v Christine,* 687 F2d 749, 754-760 (CA 3, 1982) (severance is inappropriate when valid portions are not "meaningfully severable" from the warrant, if it would be an abuse of the warrant procedure, or for a general warrant); *United States v Freeman*, 685 F2d 942, 952 (CA 5, 1982) (severance limited to circumstances where "legitimate fourth amendment interests will not be jeopardized," not where, for example, "the warrant is generally invalid but as to some tangential item meets the requirements of probable cause," or where the valid items were included as a pretext to support an unlawful search); *United States v Fitzgerald*, 724 F2d 633, 636-637 (CA 8, 1983) (permitting severance absent a showing of pretext or bad faith); *United States v Spilotro*, 800 F2d 959, 967 (CA 9, 1986) (invalid portion must be "sufficiently separable from the rest of the warrant to allow severance"); see also *Sells*, *supra* at 1158-1159.

7

More pertinent to the case at hand, severance may be improper "if probable cause existed as to only a few of several items listed . . . ." 2 LaFave, *supra*, § 3.7(d), p 436 n 214. The majority errs in adopting and applying the severance doctrine without adequately considering the circumstances of this particular case.

I would not apply the severance doctrine to the warrant involved here. A number of jurisdictions limit the use of the doctrine to cases in which a significant portion of the warrant is valid. For example, the Tenth Circuit Court of Appeals applies the doctrine "only if 'the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant.'" *Sells*, *supra* at 1151, quoting *United States v Naugle*, 997 F2d 819, 822 (CA 10, 1993). This warrant was disproportionally invalid. This is not a case in which the allegedly valid evidence formed the greater part of the warrant. In fact, evidence of marijuana possession was just one portion of a warrant that also sought other controlled substances, currency, distribution paraphernalia (various forms of which were enumerated at length), papers establishing ownership, and records of drug transactions. It is evident from considering the warrant as a whole that the purpose of this search was to uncover evidence of a drug distribution scheme.[5] That defendants may have also engaged

---

[5] While disclaiming a "hypertechnical" approach, the majority engages in just that when it groups the evidence sought under the warrant into three categories and declares that probable cause existed for two out of three of them. In fact, several categories of evidence sought by the warrant are unrelated to marijuana possession: possession of other controlled substances, currency,

(continued…)

in personal possession and consumption of marijuana was incidental to the greater part of the warrant. The majority conflates *Sells'*s directive that a court should "evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant" with the plain view doctrine. *Sells*, *supra* at 1160. This approach would foster abuse of the warrant process, as the police would be encouraged to include small, numerous items in a warrant simply to ensure that an otherwise invalid warrant can be salvaged under the severance doctrine. Further, a warrant's "scope" and "invasiveness" is not defined merely in terms of the locations that may be searched. Rather, those terms also encompass the *types* of evidence sought. And clearly the *types* of evidence justified in a search for marijuana possession make up a lesser portion of the entire types of evidence sought under this warrant.

Further, the purportedly valid portion of the warrant is not sufficiently distinguishable from the invalid portions to support severance. In the affidavit, the trash pull and the anonymous tip were used to support a search for the same evidence—evidence of marijuana manufacturing and sale. The warrant did not distinguish between marijuana that was merely in defendants' possession and marijuana that was part of the suspected marijuana distribution operation.

_____
(…continued)
paraphernalia used in the blending, packaging and sale of controlled substances, and records of drug transactions. The only categories of evidence sought under the warrant that would be necessary to establish the elements of simple marijuana possession would be marijuana and evidence of control over the premises.

Consequently, the purportedly valid portion of the warrant cannot realistically be distinguished from the invalid portions. Thus, this warrant is not suitable for severance.

Additionally, as will be addressed further in part III, there is evidence that the affiant acted in bad faith. Most jurisdictions consider the presence of bad faith on the part of the police to preclude the application of the severance doctrine, and I would do the same.

## III. THE GOOD-FAITH EXCEPTION

The good-faith exception to the warrant requirement does not salvage the constitutionality of the search of defendants' home. The good-faith exception provides that when police act in reasonable and good-faith reliance on a search warrant, the items seized need not be suppressed if the warrant is later declared invalid. *United States v Leon*, 468 US 897, 920-921; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *People v Goldston*, 470 Mich 523, 541; 682 NW2d 479 (2004). However, the exception does not apply if the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon, supra* at 923, citing *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978). In addition, the exception does not apply when the magistrate "wholly abandoned his judicial role," when the warrant is facially deficient, or when the affidavit is "'so lacking in indicia of probable cause as to render official belief in its existence

10

entirely unreasonable.'" *Leon, supra* at 923, quoting *Brown v Illinois*, 422 US 590, 611; 95 S Ct 2254; 45 L Ed 2d 416 (1975).

The good-faith exception fails to apply here on at least two grounds: the police officers did not act in objectively reasonable reliance on the warrant because the affidavit plainly did not comply with MCL 780.653, and the affiant misled the magistrate. To invoke the good-faith exception, the officers must have reasonably relied on the warrant. Reasonable reliance is gauged by an objective standard that "requires officers to have a reasonable knowledge of what the law prohibits." *Leon*, *supra* at 919 n 20, citing *United States v Peltier*, 422 US 531, 542; 95 S Ct 2313; 45 L Ed 2d 374 (1975). MCL 780.653 requires that affidavits based on information from an anonymous source include allegations that could lead the magistrate to conclude that the source spoke with personal knowledge and either that the source is credible or that the information is reliable.[6] The warrant in

---

[6] MCL 780.653 provides in relevant part:

>     The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
>
>     * * *
>
>     (b) If the person is unnamed, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.

11

this case clearly violated MCL 780.653 because the supporting affidavit was based on an anonymous tip, yet it contained none of the information required by statute. It provided no allegations that could support a finding that the source spoke with personal knowledge of the drug operation. There was no indication that the source was credible or the information reliable. So the police executing the search did not act in objectively reasonable reliance on the warrant because its supporting affidavit plainly did not comply with the statutory requirements of MCL 780.653. Accordingly, the good-faith exception does not pardon the officers' execution of an unconstitutional warrant.

In addition, there is evidence that the affiant intentionally or recklessly indicated that the anonymous tip had been received directly, rather than through Crime Stoppers. An appellate court reviews for clear error the finding that an affidavit in support of a search warrant was misleading because it contained false statements made knowingly and intentionally or with reckless disregard for their truth. *United States v Henson*, 848 F2d 1374, 1381 (CA 6, 1988). Clear error exists if the reviewing court is left with the "definite and firm conviction that the trial court made a mistake . . . ." *People v Burrell*, 417 Mich 439, 449; 339 NW2d 403 (1983). Thus, we must give deference to the decision of the circuit court, which ruled "that your police department mislead [sic] the magistrate . . . ." The preliminary examination produced sufficient evidence of misleading and incomplete statements to conclude that the circuit court did not make a mistake. The affidavit must include certain indicia of reliability relating to the anonymous

12

source. But not only did the affidavit fail to aver any of these factors, it failed to disclose that the anonymous tip originated with Crime Stoppers, a reward-based system, which bears on the source's credibility.[7] Instead, the affidavit implied that the affiant took the anonymous tip directly.[8] The affidavit also omitted reference to the three occasions on which the police conducted surveillance of defendants' residence, while at the preliminary hearing the affiant acknowledged that "those surveillances turned up nothing[.]" In sum, the affidavit misleadingly implied that the affiant had spoken to the anonymous source directly, which bolstered the source's credibility, while two key facts *omitted* from the affidavit would have *diminished* the source's credibility. The circuit court's ruling that the affiant misled the magistrate should remain intact. As such, the good-faith exception to the warrant requirement would not apply.

Because the search was conducted under a constitutionally invalid warrant and the good-faith exception does not apply, the proper remedy is to exclude the evidence discovered in the search. I would uphold the decision of the Court of Appeals.

---

[7] The Crime Stoppers Alliance operates a toll-free hotline and offers a cash reward of up to $1,000 to any person providing a tip resulting in a felony arrest.

[8] Because we review the circuit court's finding for clear error, this interpretation need not be the "only inference" that could be drawn from the affidavit, as the majority suggests. *Ante* at 15. The inference that guides us should be the one drawn by the circuit court. The circuit court heard the testimony of the affiant, considered the language of the affidavit, and concluded that the officer misled the magistrate.

13

## IV.  THE STATUTORY VIOLATION

Having concluded that the search warrant was constitutionally invalid and that the evidence seized during the search must be suppressed, there is no need to address the violation of MCL 780.653 and its proper remedy.  Accordingly, I will not reiterate my discussion of the statutory violation from the preceding section.  However, the majority's claim that this warrant did not trigger the statutory requirement that the anonymous source bear indicia of reliability merits a response.

After concluding that the search was constitutional because the trash pull alone provided probable cause for the warrant, the majority extends this reasoning to the statutory violation.  According to the majority, the requirements of MCL 780.653 are not implicated at all because the affidavit was not "based upon" information from the anonymous source, but was instead "based upon" the trash pull.[9]  In its reasoning, the majority attaches significance to the state of mind of the affiant, who stated in the affidavit that "based upon the items found [in the trash pull]," she had probable cause to believe that evidence of illegal drug activity would be found.

---

[9]  MCL 780.653 provides that an

> affidavit may be based upon information supplied to the complainant by . . . [an] unnamed person if the affidavit contains . . . affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.

This reasoning overlooks several key facts. It ignores that (1) in addition to describing the trash pull evidence, the affidavit included a paragraph describing the information provided by the anonymous source; (2) the information from the anonymous source was *the only evidence* indicating a narcotics *distribution* operation, the offense for which the warrant was issued; and (3) the subjective basis of the affiant's belief does not control the magistrate's decision. But most notably, the majority overlooks the introductory language of MCL 780.653, which provides that "[t]he magistrate's finding of reasonable or probable cause shall be *based upon all the facts related within the affidavit* made before him or her."[10] (Emphasis added.) We cannot isolate a portion of the affidavit presented to the magistrate and decide that the affidavit was "based upon" only that portion. The statute instructs that the magistrate's finding shall be based upon *all the facts* in the affidavit, which included the information provided by the unnamed source. The warrant was still *based upon* the information provided by the unnamed source, even if the affidavit contained additional information regarding the trash pull. The statutory violation was not excused simply because the warrant was also

---

[10] The majority apparently takes the position that although the first and second sentences of MCL 780.653 both use the phrase "based upon," the meaning of this phrase in each sentence is completely independent of the other. But in interpreting a statute, we must "consider both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.'" *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (citation omitted). The fact that the first sentence of MCL 780.653 compels the magistrate to base his finding on all the facts in the affidavit cannot be ignored when reading the second sentence of the statute.

15

based on the trash pull. If the affidavit had supplied only the trash pull information, the affidavit would not have supported a warrant to search for evidence of marijuana distribution, such as scales, plastic bags, firearms, and currency. So, clearly, the information provided by the anonymous source was an integral part of the magistrate's decision to approve a warrant to search for evidence of distribution.[11]

The requirements of MCL 780.653 applied to this warrant because the affidavit was based upon information from an unnamed source. Thus, even if there were no constitutional violation, defendant would be entitled to a remedy as a result of the statutory violation.

## V. CONCLUSION

I agree with the Court of Appeals holding that the affidavit in support of the search warrant failed to establish probable cause to search for evidence of marijuana sale and distribution. I would affirm the order to suppress the evidence gathered from the search and would remand for further proceedings.

Michael F. Cavanagh
Marilyn Kelly

---

[11] The majority characterizes my position as "whenever an affidavit makes the slightest reference to information supplied by an informant, the requirements of MCL 780.653 must be complied with." *Ante* at 17 n 44. This generalization obscures the bottom line, which is that *this affidavit* was based upon information from an unnamed source; thus, MCL 780.653 must be complied with.