PEOPLE v HAMPTON

Docket No. 50052. Submitted June 21, 1983, at Lansing.—Decided August 21, 1984.

Larry Hampton was convicted of second-degree murder and assault with intent to rob being unarmed following a jury trial in Detroit Recorder's Court, Leonard Townsend, J. Defendant appeals. *Held:*

1. Defendant's refusal to change an exculpatory statement given to police during interrogation, when offered an opportunity to do so, did not serve to invoke his right to remain silent. The trial court did not err in ruling that an inculpatory statement given after such an offer need not be suppressed as being taken in violation of defendant's right to remain silent.

2. Defendant's inculpatory statement was not the result of exploitation of the earlier arrest of defendant without probable cause. There were sufficient intervening circumstances to attenuate the taint of defendant's illegal arrest.

3. The trial court did not err by admitting into evidence identification testimony of one of the witnesses.

4. Defendant's claim that the trial court erred in admitting into evidence bloodstained clothing found in his room is without merit.

Affirmed.

1. Criminal Law — Right to Remain Silent — Refusal to Make Statement.

An assertion by a defendant that he did not wish to change an earlier statement is not an assertion of the right to remain silent which would prohibit police officers from later asking if a suspect wants to make a statement.

References for Points in Headnotes
[1] 21A Am Jur 2d, Criminal Law §§ 936 *et seq.*, 974.
[2, 3] 4 Am Jur 2d, Appeal and Error § 159.
29 Am Jur 2d, Evidence § 371.
Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.
[3] 29 Am Jur 2d, Evidence § 372.

2. Criminal Law — Pretrial Identification — Appeal.

    An appellate court reviews a trial court's determination of the admissibility of evidence of a pretrial identification of a defendant by examining the totality of the circumstances surrounding the challenged pretrial identification and determining whether those procedures were so impermissibly suggestive that they gave rise to a substantial likelihood of misidentification.

3. Criminal Law — Evidence — Identification — Testimony — Impermissibly Suggestive Procedures — Appeal.

    Error in admitting testimony tainted by impermissibly suggestive procedures conducive to irreparable mistaken identification does not warrant reversal where the error is harmless beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

*Melissa Z. El,* for defendant on appeal.

Before: J. H. Gillis, P.J., and D. E. Holbrook, Jr., and J. R. Ernst,* JJ.

Per Curiam. In a jury trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, and assault with intent to rob being unarmed, MCL 750.88; MSA 28.283. He appeals as of right.

On appeal, defendant contends that his inculpatory statement to police should have been suppressed from evidence. Defendant claims that his statement was given during interrogation which followed his invocation of his right to remain silent. We cannot agree based on the facts presented at the *Walker* hearing. *People v Walker*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

*(On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965). Defendant was taken into custody at about 11 a.m. on September 7, 1977. Defendant was first interviewed by police shortly after noon. At that time, he made an exculpatory statement. At about 2:30 p.m., police again contacted defendant. Defendant was first told that new evidence against him had been produced. The interrogating officer testified that he then offered defendant an "opportunity to change his first statement". The officer testified: "[h]e said he didn't want to change his statement at that time". At 8:30 p.m. of the same day, defendant was again interviewed and gave an inculpatory statement. Defendant was given *Miranda*[1] warnings before each interview.

Defendant claims that his 2:30 p.m. refusal to change his earlier statement was an invocation of his constitutional right to remain silent. The failure to scrupulously honor this right, defendant contends, negates any subsequent waiver of his right to remain silent.

The right to cut off custodial interrogation is a critical safeguard of the right not to give testimony against oneself. *Michigan v Mosley*, 423 US 96, 103; 96 S Ct 321; 46 L Ed 2d 313 (1975). We do not believe, however, that defendant ever exercised his right to cut off questioning. A refusal to make a statement is not an assertion of the right to remain silent which would prohibit police officers from later asking if a suspect wants to make a statement. *Lane v State*, 266 Ind 485; 364 NE2d 756 (1977). In the present case, defendant declined the opportunity to change his statement. This could not be considered an invocation of his right to remain silent, especially in view of his earlier willingness to speak with police. The trial judge

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

did not err by concluding that defendant did not invoke his right to remain silent by refusing to change his earlier statement.

We also agree with the circuit judge that defendant's 8:30 p.m. statement to police was not the result of the exploitation of the earlier arrest of defendant without probable cause. At the time the statement sought to be admitted into evidence was made, probable cause to arrest defendant had existed for hours. We find that there were sufficient intervening circumstances to attenuate the taint of defendant's illegal arrest. See *Johnson v Louisiana,* 406 US 356, 365; 92 S Ct 1620; 32 L Ed 2d 152 (1972).

Defendant also claims on appeal that the trial judge erred by admitting into evidence the identification testimony of Simpson Webb. An appellate court reviews a trial court's determination following a *Wade*[2] hearing by examining the totality of the circumstances surrounding the challenged pretrial identification and determining whether those procedures were so impermissibly suggestive that they gave rise to a substantial likelihood of misidentification. *People v Dean,* 110 Mich App 751; 313 NW2d 100 (1981). In arguing that the in-court identification by Mr. Webb was tainted by an earlier preliminary examination identification, defendant relies heavily on the Supreme Court's opinion in *People v Solomon,* 391 Mich 767; 214 NW2d 60 (1974). As noted by the trial judge, none of the critically suggestive circumstances present in the *Solomon* case are present here. Not all preliminary examination confrontations are impermissibly suggestive. *People v Flinnon,* 78 Mich App 380, 389-390; 260 NW2d 106 (1977).

We also agree with the trial judge's holding that

[2] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

Mr. Webb's inability to identify the defendant at a line-up does not preclude the admission of his subsequent positive in-court identification. In such a case, defense counsel is free to inform the jury of the circumstances of the unsuccessful identification. See *People v Belenor,* 71 Mich App 10, 13-14; 246 NW2d 355 (1976). This was done in the present case.

Even if the decision to admit Mr. Webb's identification testimony was an error, we would not reverse because we are convinced beyond a reasonable doubt that it was harmless. Error in admitting testimony tainted by impermissibly suggestive procedures conducive to irreparable mistaken identification warrants reversal only where the error is not harmless beyond a reasonable doubt. *Gilbert v California,* 388 US 263, 274; 87 S Ct 1951; 18 L Ed 2d 1178 (1967). We conclude that there is no reasonable possibility that any error in admitting Mr. Webb's testimony identifying defendant contributed to defendant's conviction. See *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). If jurors were not convinced by the other strong evidence identifying defendant as one of the robbers, they would not have been moved by the identification testimony of Mr. Webb which was discredited on cross-examination.

Defendant also objects to the admission into evidence of bloodstained clothing found in his room. He claims that the evidence presented was insufficient to show any connection between him and the clothing. This claim is without merit. Pursuant to the execution of a search warrant, police confiscated from defendant's room some shirts, a pair of tan pants, a beige jacket, a hat and a pair of shoes. All of the clothing was stained with what appeared to be blood. Another resident of the house in which defendant lived testified that

she saw defendant shortly before the killing wearing beige pants, a print shirt and a beige jacket. This testimony was sufficient to allow the prosecution to present in evidence the clothing found in defendant's room.

Affirmed.