# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDWARD CLAY,

        Defendant-Appellant.

UNPUBLISHED
August 20, 2015

No. 319450
Wayne Circuit Court
LC No. 13-005849-FH

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Defendant appeals by right his convictions, after a jury trial, of possession with intent to deliver 5 to 45 kilograms of marijuana, MCL 333.7401(2)(d)(ii), and felon in possession of a firearm, MCL 750.224f. The trial court sentenced defendant as a third habitual offender, MCL 769.11, to 2½ to 14 years' imprisonment for his possession with intent to deliver conviction and to five years' probation for his felon in possession of a firearm conviction. We reverse.

Defendant asserts that he was denied the effective assistance of counsel because counsel failed to move to suppress Detroit police officer Stephen Geelhood's impermissibly suggestive identification of defendant at the preliminary examination. We agree.

Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A trial court's findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id.*

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, the defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Stated otherwise, a defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy. *Trakhtenberg*, 493 Mich at 52. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily

bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant argues that counsel's performance fell below an objective standard of reasonableness when he failed to move to suppress Geelhood's impermissibly suggestive identification of defendant at the preliminary examination. An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process. *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis—one that is untainted by the suggestive pretrial procedure—can be established for the in-court identification. *Id*. at 542-543.

Not all preliminary examination confrontations are impermissibly suggestive. *People v Hampton*, 138 Mich App 235, 238; 361 NW2d 3 (1984). In *People v Solomon*, 391 Mich 767; 214 NW2d 60 (1974), our Supreme Court remanded to the lower court for proceedings consistent with Judge Lesinski's dissenting opinion in *People v Solomon*, 47 Mich App 208; 209 NW2d 257 (1973). Judge Lesinski held that a preliminary examination is a pretrial confrontation at which an unnecessarily suggestive identification procedure might constitute a denial of due process. *Id*. at 217. Judge Lesinski further opined that when considering whether a preliminary examination identification violated due process because of being unnecessarily suggestive and conducive to irreparable mistaken identification, a court must consider all relevant factors as stated in *Neil v Biggers*, 409 US 188; 93 S Ct 375; 34 L Ed 2d 401 (1972). *Solomon*, 47 Mich App at 218-219. The relevant factors to consider include the opportunity of the witness to view the suspect at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the suspect, the level of certainty demonstrated by the witness regarding the identification, and the length of time between the crime and the confrontation. *Neil*, 409 US at 199-200.

In the instant case, Geelhood observed defendant selling marijuana on the porch on June 13, 2010, and the first time Geelhood identified defendant was at the preliminary examination on June 24, 2013. Officer Geelhood observed defendant on the porch of his house for about 30 minutes from a distance of about 100 yards away but could not recall if he used binoculars. Additionally, Officer Geelhood could not remember if he was watching defendant during the day or at night. This testimony indicates that Geelhood did not have a good opportunity to view the suspect at the time of the crime. There is no indication of Geelhood's degree of attention, or the level of his certainty regarding his identification. Geelhood gave a prior description of defendant as being an African American male, 5' 8", and 185 pounds. We find no clear error in the trial court's finding, after conducting a hearing pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), that by failing to move to suppress the Geelhood's identification defendant's counsel's performance fell below an objective standard of reasonableness. On this record, based on the totality of the circumstances, a reasonable probability exists that the first part of a motion to suppress would likely have been granted because the pretrial identification procedure was so suggestive that it led to a substantial likelihood of misidentification, particularly because it had been three years since Geelhood observed defendant from 100 yards away and defendant was the only noncaucasian seated at the defense table.

At that point, because the pretrial identification was so suggestive that it could lead to a substantial likelihood of misidentification, the trial court would have needed to determine if Geelhood had an independent basis for an in-court identification that was untainted by the suggestive pretrial procedure. *Williams*, 244 Mich App at 542. Appropriate factors in considering whether a witness and had independent basis for an in-court identification include: (1) the witness's prior knowledge of the defendant, (2) the witness's opportunity to observe the criminal during the crime, (3) the length of time between the crime and the disputed identification, (4) the witness's level of certainty at the prior identification, (5) discrepancies between the pretrial identification description and the defendant's actual appearance, (6) any prior proper identification or failure to identify the defendant, (7) any prior identification of another as the culprit, (8) the mental state of the witness at the time of the crime, and (9) any special features of the defendant. *People v Gray*, 457 Mich 107, 116; 577 NW2d 92 (1998).

Officer Geelhood had no prior knowledge of defendant. Geelhood's first confrontation with defendant was at the preliminary examination where he identified defendant as the man on the porch selling drugs. As stated above, the length of time between the crime and the preliminary examination was over three years. Officer Geelhood did not have a good opportunity to observe defendant during the crime as he was about 100 yards away and could not recall if he used binoculars to watch defendant. There is no evidence of Geelhood's level of certainty at the prior identification. There is no indication of Geelhood's degree of attention. There is no evidence of any discrepancies between the pretrial identification description and defendant's actual appearance. Officer Geelhood did not previously identify defendant or fail to identify defendant and did not identify another person as the offender before the identification of defendant. There is no indication that Geelhood was affected by fatigue, nervous exhaustion, alcohol, drugs, or undue stress caused by the offense. Geelhood did not identify any idiosyncratic or special features of defendant. Under the totality of these circumstances, we conclude Geelhood did not have an independent basis for identifying defendant that was untainted by the unduly suggestive preliminary examination identification procedure. Because the preliminary examination confrontation was impermissibly suggestive and Geelhood did not have an independent basis for the in-court identification of defendant, there is a reasonable probability that a motion to suppress Geelhood's identification of defendant would have been successful. Trial counsel's failure to move to suppress Geelhood's identification was not trial strategy as there was no advantage to defendant for failing to do so. Therefore, the trial court properly concluded that counsel's performance fell below an objective standard of reasonableness when he failed to move to suppress Geelhood's identification of defendant.

In order to prove ineffective assistance of counsel, a defendant must also demonstrate there is a reasonable probability that but for defense counsel's deficient performance there is a reasonable probability the outcome would have been different. *Trakhtenberg*, 493 Mich at 51. We must disagree with the trial court's conclusion that the suppression of Geelhood's identification of defendant selling drugs outside of the home would not have made a difference in the outcome of the trial. Without Geelhood's identification of defendant as the seller of drugs outside of the home, there is no nexus between defendant and the marijuana and the guns to demonstrate that defendant possessed the marijuana and guns found in the house. The only other evidence that connected defendant to the house is the unopened envelopes addressed to defendant and that he owned the house. But evidence was presented that defendant did not reside at the home and that he rented the house to Melisha Smith and Jessica Hopkins. The mail

addressed to defendant that was found at the home was unopened, and most of the mail was roughly six months old. Thus, although there was evidence that defendant owned the house, there was a lack of evidence that he lived at the house or that he possessed or sold marijuana or other drugs from the house. In other words, the identification testimony of defendant selling drugs at the house was the lynchpin of the prosecutor's circumstantial case that defendant possessed with intent to deliver the marijuana subsequently seized from the house.

Additionally, defendant was not present during the execution of the search warrant. No fingerprints were found on the packages of marijuana or near the guns. Although men's clothing was found in the upstairs bedroom, there was no evidence presented that the clothing belonged to defendant. The fact that Smith stated, "I hope Ed doesn't do me like this," does not establish a nexus between the guns and marijuana as Smith's statement is vague and could mean a variety of things. Further, the fact that Smith was pregnant with defendant's baby does not establish a nexus between defendant and the marijuana and the guns. There is also no evidence that defendant told Smith and Hopkins to store the marijuana and the guns for him. Officer Geelhood's identification of defendant selling marijuana at the Minock address was the only evidence that placed defendant at the home and connects defendant to the marijuana and guns that were found in the home.

But for counsel's failure to move to suppress Geelhood's identification of defendant there would not have been sufficient evidence of a nexus between defendant and the marijuana and guns to show defendant was in possession of the marijuana and guns. But for counsel's error, a reasonable probability exists that the result of the proceeding would have been different. Accordingly, the trial court erred in concluding that defendant was not prejudiced by counsel's error. Rather, defendant was denied the effective assistance of counsel because "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

We reverse and remand for a new trial. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio

-4-